UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
UNITED STATES OF AMERICA,

                                                                **MEMORANDUM & ORDER**

            - against -                                  93-CR-1340 (RJD)

WONG CHI FAI,

            Defendant.
----------------------------------------------------------- x

DEARIE, District Judge

      Before the Court is Wong Chi Fai's ("Mr. Wong") Motion for Compassionate Release, ECF No. 799, filed pursuant to the First Step Act of 2018. Mr. Wong asks the Court to reduce his current life sentence to time served and order that he be released to the custody of his family in New York, who have remained supportive throughout Mr. Wong's incarceration. For the reasons that follow, the Court grants Mr. Wong's Motion.

## BACKGROUND

      On October 20, 1995, Mr. Wong was sentenced to life imprisonment after a jury found him guilty of extortion and racketeering conspiracies and related substantive charges, as well as involvement in certain murders in furtherance of those conspiracies. ECF No. 799-1, at 1-2. Mr. Wong's conviction relates to his participation in the "Tung On Gang," a gang located principally in Chinatown in New York City and composed of members of the Tung On businessmen's association and other young "street thugs." Br. of Def., 1997 WL 33782438, at *4 (2d Cir. Feb. 13, 1997). At trial, the Government argued Mr. Wong was a leader of the Tung On Gang and used his participation in businessmen's associations to disguise his unlawful activity. Id. at *5.

1

Mr. Wong, who is now 65 years old, has served 26 years of his life term. He is incarcerated at FCI Butner in North Carolina; his family resides in New York, though they visit him regularly. ECF No. 799-2, at 1-2. Throughout his 26 years in prison, Mr. Wong has maintained a "spotless" record—he has had no disciplinary violations and consistently received "outstanding" evaluations for his work as an orderly. Id. at 2-3. Three years ago, in 2016, Mr. Wong was diagnosed with metastatic papillary thyroid cancer. ECF No. 799-1, at 2. Since then, Mr. Wong has undergone multiple surgeries, including a thyroidectomy and a partial esophagectomy, and received radiation treatment, all to no avail. Id. Two years after his diagnosis doctors discovered a new mass in his throat, obstructing his airway and creating a dangerous possibility of suffocation. ECF No. 801-1, at 3. Doctors recommended a tracheostomy, which Mr. Wong declined. Id. Currently, Mr. Wong is receiving palliative chemotherapy. Id. Mr. Wong regularly spits or coughs up blood as a result of the mass in his throat and can barely eat. ECF No.799-4, at 4. Surviving on Ensure and milk, he has lost and continues to lose considerable weight. ECF No. 799-2, at 4. Mr. Wong is reportedly in frail condition and requires a walker to move from place to place. ECF No. 799-4, at 4.

A report prepared two months ago by a Bureau of Prisons ("BOP") doctor described Mr. Wong's condition as "terminal" and estimated a life expectancy of 12 months but, remarkably, declined to find that Mr. Wong's condition met the medical criteria for a "Terminal Medical Condition" eligible for BOP-recommended Compassionate Release. ECF No. 801-1, at 3. The BOP takes the position that Mr. Wong's 12-month life expectancy is the result of his voluntary decision to decline a tracheostomy and it is thus by choice, rather than medical necessity, that his life expectancy falls within the sub-18-month time frame the BOP deems appropriate for Compassionate Release. In other words, should Mr. Wong consent to a tracheostomy, his life

expectancy might exceed 18 months, rendering him a less compelling candidate, in the BOP's view, for Compassionate Release.

At the request of Mr. Wong's counsel, Mr. Wong's medical records were also evaluated by Dr. David M. Cognetti, Co-Director of Head and Neck Surgery at the Jefferson Center for Head and Neck Surgery in Philadelphia, PA. ECF No. 799-2, at 7. Dr. Cognetti reported that the cumulative impact of Mr. Wong's treatment "has had a significant impact on his function and quality of life" and he continues to have "great difficulty with swallowing" and struggles to maintain a healthy weight. Id. In Dr. Cognetti's medical opinion, Mr. Wong's condition "is terminal with an end-of-life trajectory" and his remaining time "will be measured in months." Id. at 8.

On July 11, 2019 Mr. Wong filed his Motion for Compassionate Release—just under two months after the BOP-issued medical report declining to find a "Terminal Medical Condition." ECF No. 799. The Government orally opposed the Motion during argument on July 29, 2019 citing Mr. Wong's voluntary decision to forego a tracheostomy.

## DISCUSSION

Mr. Wong argues the Court should grant him Compassionate Release in light of his serious, terminal medical condition. To that end, Mr. Wong would be released to the custody of his family, who have supported him throughout his incarceration, and who are prepared to provide the demanding and expensive medical care Mr. Wong will require upon release. The Government, in consultation with the BOP, disputes the characterization of Mr. Wong's medical condition, arguing that it is Mr. Wong's voluntary decision to decline a tracheostomy that cuts his life short, and asserts that with the surgery he would likely live longer than 18 months—the

3

life expectancy landmark the BOP has informally adopted in recommending Compassionate Release candidates. The Government, however, does not argue that if Mr. Wong were released he would be a danger to the community or that his release would otherwise go against the 18 U.S.C. § 3553(a) sentencing factors.

18 U.S.C. § 3582(c), as amended by the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant*...may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
>
> 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The Sentencing Commission has promulgated a policy statement regarding Compassionate Release, contained in U.S.S.G. § 1B1.13, that provides guidance on the "extraordinary and compelling reasons" warranting a sentence reduction. United States v. York, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (citing United States v. McGraw, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019)).

Accordingly, pursuant to the statutory directive in 18 U.S.C. § 3582(c)(1)(A) and in conjunction with the Sentencing Commission guidance provided in U.S.S.G. § 1B1.13, the Court must consider three issues in evaluating Mr. Wong's Compassionate Release application: (i) whether extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement, (ii) whether Mr. Wong is "a danger to the safety of any other person or to the community," and (iii) whether the section 3553(a) factors "to the extent they are applicable," weigh in favor of a sentence reduction. United States v. Bellamy,

4

2019 WL 3340699, at *2 (D. Minn. July 25, 2019); York, 2019 3241166, at *5; United States v. Beck, 2019 WL 2716505, at *7 (D.N.C. June 28, 2019); United States v. Johns, 2019 WL 2646663, at *3-4 (D. Ariz. June 27, 2019); McGraw, 2019 WL 2059488, at *3.

I. **Extraordinary and Compelling Reasons**

The Court finds there are "extraordinary and compelling reasons" supporting Mr. Wong's Compassionate Release. The Application Notes to § 1B1.13 provide that "extraordinary and compelling reasons" exist where "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy...is not required." McGraw, 2019 WL 2059488, at *3 (citing § 1B1.13 Application Notes). The guidance lists "metastatic solid-tumor cancer" as a specific example of a "terminal illness." Id. The Application Notes also provide that if the defendant "(i) is at least 65 years old, (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less" a sentencing reduction may be appropriate. Id. There are extraordinary and compelling reasons supporting Mr. Wong's release under either approach.

First, Mr. Wong has been diagnosed with metastatic papillary thyroid cancer—a "metastic solid-tumor cancer" that, unfortunately, more than qualifies as a terminal illness, regardless of Mr. Wong's precise life expectancy. Indeed, it is undisputed that Mr. Wong's cancer is a "serious and advanced illness" that will result in his death. Though the BOP claims that if Mr. Wong agreed to a tracheostomy his life expectancy would likely exceed 18 months—the break point at which point the BOP will consider Compassionate Release—this informal policy holds no weight for the Court. The Application Notes specifically consider, and then dispense with, a "specific prognosis of life expectancy" in determining whether "extraordinary

5

and compelling reasons" are present. Mr. Wong's "metastic solid-tumor cancer" causes him extraordinary pain and discomfort, making it virtually impossible for Mr. Wong to eat, rendering him weak and at times immobile and indisputably will result in Mr. Wong's death. This surely constitutes an "extraordinary and compelling" medical condition. Compare with Beck, 2019 WL 2716505, at *7 (granting compassionate release to 47-year-old woman with metastic breast cancer who served approximately 6 years of 13.75-year sentence)

Second, Mr. Wong recently turned 65 and, as a result of his cancer, regardless of whether it is classified as "terminal," has experienced a "serious deterioration" in his physical health. There is no question that his quality of life is far from enviable. Mr. Wong has also served 26 years of his life sentence—more than the 10 years provided for in the Application Notes. Therefore, Mr. Wong's age and current circumstances also make him a candidate for Compassionate Release independent of the fact that he suffers from a terminal medical condition.

## II. Danger to the Community

The Sentencing Guidelines "provide that compassionate release is appropriate only where the defendant is not a danger to the safety of any other person or to the community." Johns, 2019 WL 264663, at *3. Specifically, 18 U.S.C. § 3142(g) requires the Court consider (i) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves a…firearm, explosive, or destructive device," (ii) "the weight of the evidence against the person," (iii) "the history and characteristics of the person," and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." York, 2019 WL 3241166, at *7 (citing 18 U.S.C. § 3142(g)). In making this assessment, the Court should also consider whether a term of supervised release would manage any potential risk to the community. Johns, 2019 WL 264663, at *3.

6

The Court is persuaded that Mr. Wong does not present a danger to the community in his current state, and that any conceivable danger would be easily mitigated by supervision conditions. First, Mr. Wong is frail, he requires a walker and can barely eat on his own. His "frail condition" "demonstrates that there are conditions the Court could impose to reasonably assure the safety of any other person and the community." McGraw, 2019 WL 2059488, at *4; see also Bellamy, 2019 WL 3340699, at *6 (noting defendant was "wheelchair-bound and require[d] assistance to complete most of his daily activities" and thus did not pose a danger to the community). Second, any remote possibility of dangerousness will be further diminished because Mr. Wong will be released to the custody of his family, his whereabouts will be restricted and he will not be permitted to have contact with his co-defendants or any other associates from his former criminal life. Id. (granting Compassionate Release motion while imposing conditions to ensure the defendant would "not have contact with those engaging in criminal activity" and could not "conduct[] illegal business via telephone"). Third, though Mr. Wong was convicted of participating in serious and violent criminal conduct, at this point, his offenses are all almost 30 years old, if not older. Compare with Bellamy, 2019 WL 3340699, at *6 ("While Bellamy does have a significant criminal history, most of his offenses are more than 28 years old, and all of his violent offenses are more than 28 years old…[h]is most recent prior controlled substance offense is now more than 12 years old"). Finally, it is notable that the Government does not argue Mr. Wong's application should be denied because he poses a danger to the community. The Government's sole basis for opposing Mr. Wong's application has to do with his decision to decline a tracheostomy, a decision the Court has already determined does not hold weight in its analysis. Therefore, like Bellamy, Mr. Wong's "serious, deteriorating conditions," combined with "[t]he age of his prior violent…offenses" "lead[s] the Court to

conclude that he presents little risk of danger to any person in the community" and any possible risk can be mitigated with appropriate conditions of release. Id.

### III. Section 3553(a) Factors

Under section 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," considering:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>     **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     **(B)** to afford adequate deterrence to criminal conduct;
>     **(C)** to protect the public from further crimes of the defendant; and
>     **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
>     **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission ...;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Court finds that notwithstanding the seriousness of Mr. Wong's criminal conduct, the sentence served, combined with the period of supervised release that will follow, appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." Id. Indeed, Mr. Wong has already served 26 years of his life sentence, the last three of which have been spent in medical purgatory. Bellamy, 2019 WL 3340699, at *7 ("Bellamy has already served a significant portion of his sentence and has done so in extraordinary and compelling circumstances given his deteriorating health"); McGraw, 2019 WL 2059488, at *5 (serving 17 years of a life sentence is "a significant

8

sanction" particularly where health issues rendered sentence "significantly more laborious than that served by most inmates"). At this stage, to require Mr. Wong to serve out the rest of his life sentence would be "greater than necessary to serve the purposes" of 18 U.S.C. § 3553(a)(2).

## CONCLUSION

The Court finds that extraordinary and compelling reasons warrant a reduction in Mr. Wong's sentence, and that neither dangerousness to the community nor the 18 U.S.C. § 3553(a) factors sway in favor of a different result. Mr. Wong's Motion for Compassionate Release is GRANTED and it is hereby ORDERED that Mr. Wong's sentence of imprisonment be reduced to time served and it is further ORDERED that the BOP release Mr. Wong to the care of his family in New York, to be supervised for life.

The conditions of Mr. Wong's release are as follows:

1. Mr. Wong must arrange his own transportation to New York and shall report to the U.S. Probation Office in the Eastern District of New York within 72 hours of his arrival in New York.
2. Mr. Wong cannot commit another federal, state or local crime.
3. Mr. Wong cannot unlawfully possess a controlled substance.
4. Mr. Wong cannot unlawfully use a controlled substance and must submit to one drug test within 15 days of release from imprisonment. Subsequent drug testing may be suspended if the Court determines that Mr. Wong poses a low risk of future substance abuse.
5. Mr. Wong must comply with all standard conditions imposed by the Probation Office of the Eastern District of New York.

6. Mr. Wong may not have any contact with his co-defendants or other current or former members of the Tun On Gang.

SO ORDERED.
Dated: Brooklyn, New York
      July 30 2019

                                              s/Raymond J. Dearie
                                              RAYMOND J. DEARIE
                                              United States District Judge